**CASE NO. 23-1397**
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

Love, et al.,                                                    )
                                                                 )
        Plaintiffs-Appellees,                                    )
v.                                                               )
                                                                 )
**Grashorn,**                                                    )
                                                                 )
        Defendant-Appellant.                                     )
                                                                 )
                                                                 )

On Appeal from the United States District Court
For the District of Colorado, Denver
The Honorable **Raymond P. Moore**
District Court Civil Case No. **21-cv-02502-RM-KLM**

**OPENING BRIEF OF APPELLANT OFFICER GRASHORN**

Respectfully submitted,

Jonathan M. Abramson
Yulia Nikolaevskaya
3900 East Mexico Avenue., #700
Denver, CO 80210
Telephone:  303-320-0509
jabramson@sgrllc.com
jnikolaevskaya@sgrllc.com
*Attorneys for Appellant Officer Matthew Grashorn*

April 1, 2024

Oral Argument is Requested

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant, Officer Matthew Grashorn, is not a corporate entity subject to Federal Rules of Appellate Procedure 26.1.

## **STATEMENT OF PRIOR OR RELATED APPEALS**

There are no prior or related appeals within the meaning of 10th Cir. R. 28.2(C)(1).

# **TABLE OF CONTENTS**[1]

CORPORATE DISCLOSURE STATEMENT ..........................................................i

STATEMENT OF PRIOR OR RELATED APPEALS............................................ ii

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF THE ISSUES.................................................................1

STATEMENT OF THE CASE...................................................................2

SUMMARY OF THE ARGUMENT ........................................................7

ARGUMENT ..........................................................................................9
    I.      STANDARD OF REVIEW .............................................................9
    II.    THE CASE LAW WAS NOT CLEARLY ESTABLISHED AS TO
    APPELLANT'S ACTIONS AT THE TIME OF THE INCIDENT. ............10
    III.   APPELLANT'S ACTIONS AT THE TIME OF THE INCIDENT
    WERE REASONABLE UNDER THE TOTALITY OF
    CIRCUMSTANCES.........................................................................18
    IV.   APPELLANT IS ENTITLED TO QUALIFIED IMMUNITY EVEN
    IF THE APPELLANT MADE A MISTAKE AS TO HERKIMER'S
    INTENTIONS...............................................................................31

CONCLUSION .......................................................................................33

STATEMENT REGARDING ORAL ARGUMENT ...........................................33

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........35

---

[1] The headings of this brief and the order of headings are pursuant to PRACTITIONER'S GUIDE TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT, Tenth Edition, December 26, 2023.

CERTIFICATE OF SERVICE ................................................................36

ATTACHMENTS

ATTACHMENT 1: DISTRICT COURT ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT DATED 11/15/2023……………………………………………………………A1

# TABLE OF AUTHORITIES

**Cases**

*Altman v. City of High Point*, 330 F.3d 194 (4th Cir. 2003) ...................................21

*Am. Canine Found. v. City of Aurora*, 618 F. Supp. 2d 1271 (D. Colo. 2009) .......29

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...........................................................32

*Andrews v. City of Branch*, 454 F.3d 914 (8th Cir. 2006) .......................................11

*Andrews v. the City of West Branch, Iowa*, 454 F.3d 914 (8th Cir. 2006) ..............13

*Arnold v. City of Olathe*, 35 F.4th 778 (10th Cir. 2022) ..........................................10

*Birkes v. Tillamook County*, 2011 WL 1792135 (D. Or. 2011) ...............................30

*Branson v. Price*, 2015 U.S. Dist. LEXIS 126652 (D. Colo. 2015) 11, 12, 14, 18, 22

*Brown v. Battle Creek Police Dep't*, 844 F.3d 556 (6th Cir. 2016) ........................29

*Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3rd Cir. 2001) ......................................13

*Cabisca v. City of Rochester*, 2019 U.S. Dist. LEXIS 191052 (W.D.N.Y. 2019) ..30

*City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) .............................................12

*Dziekan v. Gaynor*, 376 F. Supp. 2d 267 (D. Conn. 2005) .....................................30

*Estate of Smart v. City of Wichita*, 951 F.3d 1161 (10th Cir. 2020) ......................32

*Estate of Valverde v. Dodge*, 967 F.3d 1049 (10th Cir. 2020) ........................... 9, 19

*Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008) ............................................19

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................30

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................10

*Henderson v. Glanz*, 813 F.3d 938 (10th Cir. 2015) ...............................................19

*Johnson v. Jones*, 515 U.S. 304 (1995) ....................................................................1

Kisela v. Hughes, 138 S. Ct. 1148 (2018) ...............................................................17

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................................................................31

*Mayfield v. Bethards*, 826 F.3d 1252 (10th Cir. 2016).............................................11

*Mayfield v. Harvey Cty. Sheriff's Dep't*, 731 Fed. Appx. 685 (10th Cir. 2018).......15

*Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001) ...................................................19

*N.E.L. v. Douglas Cty., Colorado*, 740 F. App'x 920 (10th Cir. 2018)...................11

*Pearson v. Callahan*, 555 U.S. 223 (2009).............................................................32

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)..............................................................19

*Quinn v. Young*, 780 F.3d 998 (10th Cir. 2015) .......................................................9

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005) ...................................................................................13

*Schutt v. Lewis*, 2014 U.S. Dist. LEXIS 110633, 2014 WL 3908187 (M.D. Fla., 2014) ................................................................................................................17

*Scott v. Harris*, 550 U.S. 372 (2007) ......................................................................19

*Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992)......................................................27

*Stephenson v. McClelland*, 632 Fed. Appx. 177 (5th Cir. 2015)............................15

*Surat v. Klamser*, 52 F.4th 1261 (10th Cir. 2022) ....................................................9

*Swanson v. Town of Mt. View, Colo.*, 577 F.3d 1196 (10th Cir. 2009)...................10

*Thomas v. Durastanti*, 607 F.3d 655 (10th Cir. 2010) ............................................12

*Vette v. Sanders*, 989 F.3d 1154 (10th Cir. 2021) ....................................................9

*Viilo v. Eyre*, 547 F.3d 707 (7th Cir. 2008) .............................................................13

*Walton v. Powell*, 821 F.3d 1204 (10th Cir. 2016)...................................................20

*Weise v. Casper*, 593 F.3d 1163 (10th Cir. 2010) ...................................................10

*White v. Pauly*, 137 S. Ct. 548 (2017) ......................................................................9

**Statutes**

28 U.S.C. § 1291 .........................................................................................................1

28 U.S.C. § 1331 .........................................................................................................1

28 U.S.C. § 1367 .........................................................................................................1

42 U.S.C. § 1983 .........................................................................................................6

C.R.S. § 13-21-131 ...................................................................................................6, 7

Larimer County Code, ARTICLE I. IN GENERAL Sec. 6-1 ..................................23

**Rules**

Fed. R. App. P. 4(a)(1)................................................................................................1

USCS Fed. R. App. P. 32.1 .......................................................................................15

## STATEMENT OF JURISDICTION

The District Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. This appeal is timely because the Notice of Appeal was filed within the time limits of Fed. R. App. P. 4(a)(1) (the Order appealed from was entered November 15, 2023) (Attachment 1: District Court Order Filed 11/15/2023). The Order is appealable under a "narrow exception that allows for appeal of an order denying qualified immunity before trial, but only if the appeal involves "neat abstract issues of law."" *Johnson v. Jones*, 515 U.S. 304, 317 (1995) (quotation omitted).

## STATEMENT OF THE ISSUES

I. THE DISTRICT COURT ERRED IN FINDING THAT THE LAW WAS CLEARLY ESTABLISHED AS TO APPELLANT'S ACTIONS AT THE TIME OF THE INCIDENT, AS THE LAW CITED BY THE APPELLEES AND THE DISTRICT COURT WAS GENERIC AND NOT PARTICULARIZED TO THE FACTS OF THE INSTANT CASE.

II. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANT'S ACTIONS AT THE TIME OF THIS INCIDENT WERE NOT REASONABLE UNDER THE CIRCUMSTANCES, AS THE DISTRICT

COURT DID NOT DISCUSS WHAT MATERIAL FACTS THE DISTRICT

COURT CONSIDERED AND WHAT MATERIAL FACTS WERE

GENUINELY DISPUTED.

III.THE DISTRICT COURT ERRED BY NOT FINDING THAT APPELLANT

WAS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE

APPELLANT MADE A REASONABLE MISTAKE AS TO THE ACTIONS

AND INTENTIONS OF HERKIMER.

## STATEMENT OF THE CASE[2]

On June 29, 2019, Appellees were trespassing on private property. (App. Vol. IV

at 660, 67:15-25, 68:1-13). Appellees did not have the private property owner's

consent or authorization to be on that property. (Ex. A[3], 0:18-1:20). Appellant was

on duty when he responded to a dispatch call to investigate the property owner's

call. (App. Vol. III at 409-11, 45:7-9, 47:8-14, 51:11-13). The property owner stated

---

[2] Full statement of facts submitted by Appellant with his Motion for Summary
Judgment can be located at (App. Vol. III at 370-97).

[3] Exhibit A (911 call) and Exhibit B (Appellant's BWC footage) are conventionally
submitted materials.

that there should not be anyone on the property on the weekends. (Ex. A, 1:10-1:20). The property owner did not know if Appellees were using the business' dumpster but stated it might be something they were planning on doing, since they were unpacking something from the truck. (Ex. A, 1:54-2:11).

The Appellant arrived at the location in a clearly marked patrol car in broad daylight and got out of his vehicle. (Ex. B[4], 0:00:03-0:00:08).[5] Appellant believed he could be investigating a burglary in progress. (App. Vol. III at 410, 47:19-20). Before Appellant could even conduct an investigation, speak with or identify Appellees, initially one dog, Bubba, and then a second dog, Herkimer, began running at Appellant. (Ex. B, 0:00:10-00:00:16). At the time of the incident, two of Appellees' dogs were unleashed. (App. Vol. IV at 660, 67:19-69:14). Bubba was a relatively large dog and fairly substantial dog. (App. Vol. III at 524, 117:12-14). Appellant provided Appellees with an opportunity to call off their dogs. (App. Vol. III at 609-10, 73:2-25, 74:1-5). Bubba responded to Appellee Hamm's voice command, stopped running towards Appellant and eventually turned around. (App.

---

[4] *See*, Footnote 3.

[5] *See*, timer on the bottom left.

Vol. III at 530, 138:17-19). Herkimer did not respond to Appellee Hamm's voice command and continued to run at Appellant. (App. Vol. III at 525, 121:5-10, at 609, 73:2-11). As Herkimer was only a few feet away from Appellant, Appellant fired two shots at Herkimer. (App. Vol. III at 428, 121:12-20). Appellant believed that he would be bitten by Herkimer if he did not shoot. (App. Vol. III at 427, 116:20-21). Between the time Herkimer was first observed on body worn camera ("BWC") footage, and the time Appellant fired at Herkimer, exactly **three (3) seconds** have passed. (Ex. B, 0:00:13-0:00:16). No physical boundary (fence or door) separated Appellant from either dog. *Id*. Prior to shooting, Appellant considered alternatives other than deadly force, but he did not have time to use other alternatives because of how fast the incident unfolded and he also ruled them out as ineffective under the circumstances. (App. Vol. III at 431, 133:4-8, 134:21-22, at 437, 156:2-15).

Appellees' own expert witness, James Crosby ("Crosby"), stated during his deposition that "there was a possibility that he [Appellant] might have been bitten." (App. Vol. III at 532, 148:20-21). Crosby also testified that "if Herkimer was called [back] that he did not respond to that voice command." (App. Vol. III at 525, 121:9-10). Crosby also stated that a police officer does not need to be physically injured in order to be able to use deadly force based on other factors. (App. Vol. III at 121:20-

22). Appellant does not have to wait to be bitten by a dog and suffer injury before using deadly force to protect himself. (App. Vol. III at 530, 139:5-9). Crosby reiterated that the Colorado Dog Protection Act does not require officers to attempt to use less lethal force prior to using lethal force. (App. Vol. III at 526, 123:14-18). The law enforcement dog encounter training class is NOT intended to make a police officer into a dog behavior expert. (App. Vol. III at 526:15-19). The training is to help an officer stay safe. *Id*. Crosby also stated that everything from a Great Dane to a Pomeranian is capable of killing a human and has done so. (App. Vol. III at 511, 65:16-17). A large dog, due to its size, is probably going to cause more injury than a tiny, little dog. (App. III Vol. at 511, 65:22-24). When asked if Appellees did anything wrong in this incident, Crosby stated: "They did not have their dog on a leash." (App. Vol. III at 533, 152:8-10).

Subsequent to this incident, Appellees filed their Complaint on June 28, 2021, followed by an Amended Complaint on August 24, 2021 in the Larimer County District Court, which was subsequently removed to U.S. District Court for the District of Colorado on September 14, 2021. The Amended Complaint named Appellant, Sergeant Philip Metzler, Chief Robert Ticer and the City of Loveland, Colorado as Defendants. On November 23, 2021, Appellees filed a Second

Amended Complaint. (App. Vol. I at 16-55). The Second Amended Complaint stated the following Claims for Relief: (1) C.R.S. § 13-21-131 - Unlawful Seizure against Appellant in violation of the Colorado Constitution, Article II, Section 7; (2) 42 U.S.C.§ 1983 – Unlawful Seizure against Appellant and Chief Ticer in violation of the Fourth Amendment, Due Process; (3) 42 U.S.C. § 1983 – *Monell* claims against the City of Loveland alleging unconstitutional policies, practices and customs and 4) 42 U.S.C. § 1983 – Retaliation against Sergeant Metzler in violation of the First and Fourteenth Amendment. *Id.*

All named Defendants filed Motions to Dismiss, including the Appellant. (App. Vol. I at 56-98). In his Motion to Dismiss, Appellant invoked the defense of Qualified Immunity and included an argument that the law was not clearly established as to his actions. (App. Vol. I at 63-76). As Motions to Dismiss were pending, Appellees filed a notice to voluntarily dismiss Chief Ticer on February 4, 2022 which was granted by the District Court on the same date. On September 21, 2022, the District Court issued an Order on Defendants' Motions to Dismiss. (App. Vol. I at 150-162). The District Court dismissed all claims against the City of Loveland and Philip Metzler. (App. Vol. I at 162). However, the District Court denied Appellant's Motion to Dismiss as to all claims and denied Appellant

Qualified Immunity. (App. Vol. I at 156). After completion of discovery, Appellant filed his Motion for Summary Judgment on March 27, 2023. (App. Vol. II at 197-369). The Appellant again invoked the defense of Qualified Immunity and again argued that the law was not clearly established as to his actions at the time of the incident. (App. Vol. II at 200-212). On November 15, 2023, the District Court issued its Order[6] on Appellant's Motion for Summary Judgement. (App. Vol. VI at 1060-1070). The District Court granted Appellant's Motion for Summary Judgement as to Appellees' claim under C.R.S. §13-21-131 but denied Appellant Qualified Immunity as to Section 1983 Unlawful Seizure claim. (App. Vol. VI at 1064-1066).

## SUMMARY OF THE ARGUMENT

This is a case about an officer involved in a rapidly evolving situation. The Appellant **had only 3 seconds to evaluate the scene/situation and decide how to proceed before he discharged his weapon.** Appellant fired in his own defense at Herkimer, a Pitbull mix that was running directly at the Appellant when Herkimer

---

[6] Simultaneously with a Motion for Summary Judgement, Appellant also filed a Motion to Exclude Testimony of Appellees' Expert Witness, Crosby. The District Court ruled on the Appellant's Motion for Summary Judgement and Motion to Exclude in the same Order. (App. Vol. VI at 1060-70).

did not respond to the command of his owner, Appellee Hamm. Despite Appellees' attempt to create various issues of material fact, the relevant facts of this case are undisputed as this incident was depicted on the BWC video of Appellant. Because the material facts of this case are not genuinely in dispute, based on applicable case law Appellant is entitled to Qualified Immunity.

First, the case law was not clearly established as to the actions of the Appellant. No Supreme Court or Tenth Circuit case exists that would address a similar factual scenario and a scenario where a police officer had a **mere 3 seconds to make a decision regarding rapidly approaching dog**. However, case law from other circuits does support Appellant's position that he acted reasonably and lawfully.

Second, Appellant's actions were reasonable under the tense, uncertain and rapidly evolving circumstances in this case where **the window of decision making was only 3 seconds**. The District Court erred by finding that material issues of fact existed as to the issue of whether the actions of the Appellant were reasonable.

Lastly, even if the Appellant made a mistake in assessing the circumstances rapidly evolving around him **in the span of 3 seconds** available to him, his mistake was reasonable under the circumstances, and he is entitled to Qualified Immunity.

## ARGUMENT

## I. STANDARD OF REVIEW

The Court "review[s] the district court's denial of summary judgment on qualified immunity grounds de novo, with [ ] review limited to purely legal issues." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). In applying this standard, the Court "ordinarily must accept the version of facts the district court assumed true at summary judgment." *Vette v. Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021). The Court can also "include facts the parties do not dispute on appeal." *Surat v. Klamser*, 52 F.4th 1261, 1267 (10th Cir. 2022).

In an interlocutory appeal from the denial of summary judgment based on qualified immunity, the Court has jurisdiction over the abstract legal questions of (1) whether, accepting the facts the district court concluded a reasonable jury could find based on the summary judgment evidence, those facts constitute a legal violation, and (2) whether that legal violation was clearly established at the time of the violation. *See Estate of Valverde v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020).

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quotation omitted). After the defendant has invoked qualified immunity at

the summary judgment stage, the "plaintiff must clear two hurdles." *Swanson v. Town of Mt. View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009). Plaintiff must "demonstrate on the facts alleged [] that the defendant violated his constitutional or statutory rights." *Id.* Plaintiff must also demonstrate that "the law was clearly established at the time [the] action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court has discretion to decide which prong of the analysis to address first, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citation omitted), and "must grant the defendant qualified immunity if the plaintiff fails to prove either prong," *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022).

## II. THE CASE LAW WAS NOT CLEARLY ESTABLISHED AS TO APPELLANT'S ACTIONS AT THE TIME OF THE INCIDENT.

To establish a Fourth Amendment constitutional violation of unlawful seizure, Appellees must carry their burden and cite to a **factually similar** case which would put Appellant on notice that his actions at the time of the incident were unlawful. Here, Appellees failed to carry their burden because the case law they cited was generic and not particularized to the specific facts of this case. Moreover, the District Court erred by finding that the law was clearly established as to Appellant's actions by citing to the generic and not particularize to this case law.

10

In Appellees' Response to Appellant's Motion for Summary Judgement, Appellees cited *Mayfield v. Bethards*, 826 F.3d 1252, 1258 (10th Cir. 2016) for the generic proposition that dogs are subject to Fourth Amendment protection. (App. Vol. V at 772-773). In the Order denying Appellant's Motion for Summary Judgment, the District Court stated that "[i]t is clearly established in this Circuit that a police officer's shooting of a pet dog is a "seizure" under the Fourth Amendment"[7] and "[w]hether the seizure here violated Plaintiffs' constitutional rights depends on whether it was reasonable under the circumstances."[8] (App. Vol. VI at 1064-1065). No other fact specific case law was cited by the Appellees or the District Court. But under the established precedent, it is clear that "the proffered case law 'must be particularized to the facts of the instant case. . . . And it's the plaintiff's burden to identify the relevant clearly established law." *See N.E.L. v. Douglas Cty., Colorado*, 740 F. App'x 920, 929 (10th Cir. 2018) (citations omitted). In fact, the Tenth Circuit has unambiguously emphasized that it is a plaintiff's burden to cite to cases that

---

[7] Citing *Mayfield*, 826 F.3d at 1258-59.

[8] Citing *Andrews v. City of Branch*, 454 F.3d 914, 918 (8th Cir. 2006) and *Branson v. Price*, 2015 U.S. Dist. LEXIS 126652 (D. Colo. 2015).

satisfy the burden of demonstrating the asserted law is clearly established. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). In addition, the requirement that the clearly established prong must be defined with specificity has been also stressed by the Supreme Court. In *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019), the Supreme Court re-emphasized that "the clearly established right must be defined with specificity" and not "at a high level of generality." *See also Pauly*, 137 S. Ct. at 552 ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined at a high level of generality. . . . Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.")

A factually similar case which would clearly establish that Appellant's actions were unlawful does not exist in the Supreme Court or the Tenth Circuit. Some cases pertaining to dog seizures have been summarized by the Colorado District Court in *Branson*, 2015 U.S. Dist. LEXIS 126652. However, those cases are factually different from the circumstances Appellant was facing. The most crucial difference between those cases and this incident is the fact that this incident rapidly unfolded leaving Appellant with only **three (3) seconds** to determine what to do.

The cases discussed in *Branson* are as follows. In *Viilo v. Eyre*, 547 F.3d 707, 708 (7th Cir. 2008), a Labrador/Spaniel dog leapt the fence of his owner's yard while his owner was present in the yard and toward the police officers. *Id.* The officers shot the dog twice and the dog retreated behind some bushes. *Id.* The dog reemerged, and the police shot the dog again and killed it. *Id.* Officers did not permit the owner to retrieve her dog. *Id.*

In *Brown v. Muhlenberg Twp*., 269 F.3d 205, 209 (3rd Cir. 2001), a rottweiler escaped his owner's yard and went to an adjacent parking lot. *Id.* A police officer noticed the dog while he was patrolling, exited his car, approached the dog, clapped his hands, and called to the dog. *Id.* The dog barked and then withdrew. *Id.* As the owner was screaming out the window, the officer shot and killed the dog. *Id.*

In *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 965 (9th Cir. 2005), police officers killed three dogs during the execution of multiple search warrants. The officers were aware of the existence of the dogs prior to the execution of the warrants. *Id.* at 968-69.

In *Andrews v. the City of West Branch, Iowa*, 454 F.3d 914, 916 (8th Cir. 2006), the officer responded to a call about a large black dog at-large. An officer spotted a

dog in the backyard of a house, and he fired two shots at the dog. *Id.* But the officer shot the wrong dog. *Id.*

And in *Branson*, 911 received a call about a dog at-large. 2015 U.S. Dist. LEXIS 126652, at *6. The dog was a Keeshond/Boxer/American Staffordshire Terrier mix weighing around 90-100 lbs. *Id*. The dog was located but retreated into the garage. *Id*. Officers attempted to use catch poles and eventually used tasers to retrieve the dog but were unsuccessful. *Id*. Officers shot at the dog on two different occasions and multiple times as the dog was either running away or was in the catch pole. *Id*. The Court found that defendants' actions were unreasonable. *Id*.

This case is vastly different from the facts of the cases discussed above. In this case, Appellant was investigating a call of at least a trespassing and maybe a burglary. Appellees were in fact trespassing. Appellant was not familiar with Appellees or their dogs. Herkimer was a Pit bull mix. The Appellant did not have notice that dogs would be present or would run at him. Herkimer was "at-large" and not on his own property. At some point, two dogs were running in the Appellant's direction. Both dogs were not small like a Labrador/Spaniel. Appellant allowed Appellees an opportunity to control both dogs. Herkimer did not respond to Appellee

Hamm's command. Appellant did not know Herkimer and only had **three (3) seconds** to make a decision on how to protect himself. Appellant did not have a catch pole and Herkimer was not in a catch pole when Appellant fired. Appellant only fired on Herkimer as Herkimer was right next to the Appellant. Appellant fired because he was fearful of Herkimer. None of the above cases serve to put Appellant on notice. The Appellant is entitled to Qualified Immunity as a matter of law.

As illustrated above, there is no Supreme Court or Tenth Circuit precedent dealing with the exact, or similar, factual scenario.[9] However, a prior precedent from the Fifth Circuit, *Stephenson v. McClelland*, 632 Fed. Appx. 177 (5th Cir. 2015)[10], may provide guidance in support of Appellant's position. In *Stephenson*, an officer responded to a 911 call reporting a man brandishing a gun on a residential street. *Id*., at 179. When the officer arrived on scene, he noticed an individual who appeared to

---

[9] As to the Tenth Circuit precedent, Appellant was able to locate a single case and it has a slightly different factual scenario from this case. In *Mayfield v. Harvey Cty. Sheriff's Dep't*, 731 Fed. Appx. 685, 690-691 (10th Cir. 2018), officers shot a dog that charged at them once and then "snarled, showed [her] teeth, barked at [the officers] in an aggressive manner, and attacked [them] again." This Court found that seizure was reasonable. *Id*., at 691.

[10] This case is cited for it persuasive value pursuant to USCS Fed. R. App. P. 32.1.

match the caller's description, though he could not see whether the individual had a gun. *Id.* When he exited his patrol car, the officer commanded the individual to stop and show his hands, but the individual did not comply and instead began to move away from the car and toward a nearby house. *Id.* Feeling concerned for his safety, the officer drew his weapon and approached the individual. *Id.* As he did so, he was surprised by a fifty-pound, three-year-old boxer, which, according to the officer, bared its teeth and jumped on him. *Id.* at 180. The individual testified, on the contrary, that the dog was friendly, did not jump, and was only "smiling" at the officer. *Id.* The officer felt threatened by the dog and fired a single shot, killing the dog. *Id.* The Fifth Circuit held that the plaintiffs' evidence was insufficient to demonstrate that a constitutional right was clearly established such that a reasonable officer would have understood that his conduct violated that right. *Id.* at 185. The court based this holding on three primary facts. First, the officer did not know there would be a dog present and was surprised when it appeared. *Id.* Second, even if plaintiffs knew the dog was not aggressive, the officer did not. *Id.* Third, the officer was startled by a large dog that was showing its teeth. *Id.* Because the officer had to make "a split-second judgment in a tense situation and acted to protect himself," the court concluded that the officer was entitled to qualified immunity. *Id.*

The Fifth Circuit decision in *Stephenson* is also supported by a case from a federal District Court in Florida, *Schutt v. Lewis*, 2014 U.S. Dist. LEXIS 110633, 2014 WL 3908187 (M.D. Fla., 2014). The fact pattern in *Schutt* is nearly identical to the fact pattern in this case. In *Schutt*, a Court found that an officer's actions in shooting a dog were reasonable when an Officer was faced with a "rapidly approaching dog that was large, uncollared, and noncompliant with its owner's command." *Schutt*, 2014 U.S. Dist. LEXIS 110633, at *9. Plaintiff called her dogs back, but only one dog listened; the other dog ran towards the police officer. *Id*. at *2. The entire incident lasted approximately 4 seconds. *Id*. The Court took into consideration the amount of time the officer had in making the decision to shoot and stated that "[w]ith only seconds to respond, [officer] chose to shoot [the dog], and the Court cannot say that decision was unreasonable under the circumstances." *Id*.

As argued above, the clearly established law must be very close to the act alleged in the complaint and should not be defined at a "high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). In this case, no Supreme Court, Tenth Circuit or other Circuits precedent establishes that Appellant violated any clearly established rights. Most importantly, cases cited by Appellant, from Fifth Circuit and the District of Florida, show that under the similar factual scenario actions of officers shooting

at rapidly approaching dog that was large, unrestrained, and noncompliant with its owner's command does not violate the Constitution. This Court should find the District Court erred in finding that the law was clearly established and reverse the denial of Qualified Immunity to Appellant.

### III. APPELLANT'S ACTIONS AT THE TIME OF THE INCIDENT WERE REASONABLE UNDER THE TOTALITY OF CIRCUMSTANCES.

The District Court erred in finding that Appellant's actions were not reasonable under the totality of the circumstances. Although the District Court briefly analyzed the factors summarized in *Branson*, in an attempt to determine whether Appellant's actions were reasonable, the District Court did not outline the facts considered, did not state which facts were material and did not state which facts were truly disputed. This error is significant because no issues of material fact actually exist in this case. The BWC footage of the Appellant depicted the incident, and Appellees cannot viably dispute Appellant's testimony about his beliefs and perceptions at the time of this incident. When this Court analyzes the material undisputed facts of this case, it will find that Appellant acted reasonably under the circumstances facing him in the span of **three (3) seconds** that he had for his decision-making.

At the summary judgment stage, once the Court identifies the relevant facts and draw all inferences in the non-movant's favor, the reasonableness of an officer's actions "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). This Court is "not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008). However, the mere existence of controverted factual issues does not necessarily divest this Court of jurisdiction. *See Estate of Valverde*, 967 F.3d at 1058-1059. This Court "need not . . . decline review of a pretrial order denying summary judgment solely because the district court says genuine issues of material fact remain; instead, [this Court] lack[s] jurisdiction only if [this Court's] review would require second-guessing the district court's determinations of evidence sufficiency." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). Thus, this Court's "jurisdiction is clear when the defendant does not dispute the facts alleged by the plaintiff and raises only legal challenges to the denial of qualified immunity based on those facts." *Henderson v. Glanz*, 813 F.3d 938, 948 (10th Cir. 2015) (internal quotation marks omitted); *see Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014) ("[D]eciding legal issues of this sort is a core

responsibility of appellate courts . . . ."); *Walton v. Powell*, 821 F.3d 1204, 1209 (10th Cir. 2016) ("[I]f the rule were otherwise and we could not consider the sufficiency of the (given) facts to sustain a lawful verdict, a great many (most?) qualified immunity summary judgment appeals would be foreclosed and [the] promise of assuring a meaningful interlocutory opportunity to vindicate what is supposed to be an immunity from trial would be irretrievably lost." (internal quotation marks omitted)). Also, when the district court expresses no view on the sufficiency of the evidence regarding an essential element of a claim or defense, this Court may assume that task. *See Walton*, 821 F.3d at 1208 ("Often enough, a party will argue that the district court failed to identify what facts a jury might reasonably find—an assertion that requires us, first, to decide if the district court did or didn't determine the facts a jury could find and, second, to determine the facts for ourselves if the district court didn't.").

This Court is not always bound by a district court's ruling that the evidence presented would support a particular fact-finding. In *Scott*, 550 U.S. at 380, the Supreme Court held that the lower courts should have discredited the plaintiff's version of events because it was "blatantly contradicted" by videotape of the incident. *See also Durastanti*, 607 F.3d at 659 ("While a court considering a

summary judgment motion based upon qualified immunity usually must adopt the plaintiff's version of the facts, that is not true to the extent that there is clear contrary video evidence of the incident at issue." (brackets and internal quotation marks omitted)). In sum, this Court has jurisdiction if the defendant's appeal seeks qualified immunity based on incontrovertible facts, facts that the district court has declared to be supported by the record, and—to the extent that the district court has not expressed its view—the remaining evidence as seen in the light most favorable to Plaintiff. *See Estate of Valverde*, 967 F.3d at 1058-1059.

"The Fourth Amendment prohibits unreasonable *seizures*, not unreasonable or ill advised conduct in general… Consequently, [the Court] scrutinize[s] only seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment." *Arnold*, 35 F.4th at 789 (citation omitted). "[S]everal circuits have recognized that shooting a dog is a reasonable seizure when the dog poses an imminent threat to officer safety and the use of force is unavoidable." *Mayfield*, 731 F. App'x at 690. "When a dog leaves the control of his owner and runs at large in a public space, the government interest in controlling the animal and preventing [harm to citizens] waxes dramatically, while the private interest correspondingly wanes." *Altman v. City of High Point*, 330 F.3d 194, 205 (4th Cir. 2003).

In *Branson*, 2015 U.S. Dist. LEXIS 126652 at *14, the Colorado District Court summarized various factors other courts analyzed to determine whether a seizure of a dog was reasonable under the totality of the circumstances. However, Appellant was not able to find a Tenth Circuit opinion as to what factors should be considered in evaluating whether the seizure of a dog was reasonable. *See Mayfield*, 731 F. App'x at 690-691. The factors considered in *Branson*, which are not limited, are as follows: (1) Whether the dog was "at-large" or whether the owner was available and willing to assert control over the dog; (2) The breed of the dog; (3) Whether there was time to find an alternative solution to gain control of the dog; (4) Whether non-lethal means were available to control the dog; and (5) Whether the dog posed a danger to the officer or the public. *Branson*, 2015 U.S. Dist. LEXIS 126652 at *14. Because the District Court analyzed the *Branson* factors in its Order, Appellant will address these factors below.

**As to Factor One**, as a matter of law, Herkimer was "at-large" at the time of this incident and the District Court erred in finding that Factor One weighs in favor of Appellees. (App. Vol. VI at 1065). *Branson's* Factor One reads as follows: "[w]hether the dog was "at-large" **or** whether the owner was available and willing to assert control of the dog". *Branson*, 2015 U.S. Dist. LEXIS 126652 at *5. The

District Court stated that a reasonable fact finder could conclude that Herkimer was not "at-large" because Appellees were present and because Appellees already successfully called off one of their other dogs. (App. Vol. VI at 1065). First, based on the language of Factor One, Appellant was ONLY required to show one proposition: whether the dog was "at-large" **or** whether the owner was available and willing to assert control of the dog. Here, Appellant did show that Herkimer was indeed "at-large" at the time of the shooting because 1) he was not physically controlled by a human via a leash while on someone else's private property and 2) because he did not respond to a verbal command of the accompanying person. In considering whether Herkimer was "at-large" as a matter of law, applicable legal definition from Larimer County ordinance should be considered. The definition of "at-large" under the Larimer County ordinance, where this incident occurred, is as follows: "**not physically controlled by a human being by means of a leash** or lead held by the human being, or not at all times accompanied by a person and **does not at all times immediately respond to sound, mechanical, electrical or other command of its accompanying person**." *See*

https://www.larimer.org/sites/default/files/uploads/2017/animal.pdf, Larimer County Code, ARTICLE I. IN GENERAL Sec. 6-1 (emphasis added). Thus, it is a

question of law whether or not Herkimer was "at-large" and not a question of fact. And under a clear definition of the applicable Larimer County ordinance, Herkimer was "at-large" at the time of the shooting because he was not leashed and did not respond to a verbal command.

Second, Appellees' own expert witness, Crosby, testified that Herkimer did not respond to Appellee Hamm's command when Herkimer was called back. (App. Vol. III at 525, 121:9-10). Thus, under the legal definition of "at-large" Herkimer was "at-large" according to Crosby. But most importantly, it is also irrelevant and immaterial that Appellees were successful in calling their other dog, Bubba, especially because of the District Court's own finding that "[i]t is impossible to know what Herkimer would have done if he was not shot." (App. Vol. VI at 1065). Bubba is not Herkimer and the fact that Bubba may have followed the command is irrelevant as to what Herkimer may have done. Under the legal definition of "at-large," Herkimer was "at-large" at the time of the incident. This Court should find that the District Court erred in its finding that Factor One weighs in Appellees' favor.

**As to Factor Two**, the breed of the dog, the District Court did properly find that because Herkimer looked like a Pit-bull, a breed that is widely perceived as

unpredictable and dangerous, this factor weighs in favor of the Appellant. (App. Vol. VI at 1066).

**As to Factor Three and Four**, the District Court stated that these "factors do not weigh heavily in either side's favor." (App. Vol. VI at 1066). The District Court properly found that the situation facing Appellant was rapidly evolving. (App. Vol. VI at 1066). But the District Court erred in finding that "the circumstances do not conclusively establish that a reasonable officer in Defendant's position could not have used non-lethal means available to avoid whatever danger the approaching dog posed. At the very least, it is debatable whether Defendant had enough time to respond differently." (App. Vol. VI at 1066). The District Court did not outline what material facts the District Court considered or assumed in making these conclusions but found that Factors Three and Fouth weight in favor of the Appellees. *Id*.

As to Factors Three and Four, because it is unknown what specific material facts the District Court assumed in finding that Factors Three and Four weigh in favor of the Appellees, this Court should independently make those factual determinations. *See Walton*, 821 F.3d at 1208 ("Often enough, a party will argue that the district court failed to identify what facts a jury might reasonably find—an assertion that

requires us, first, to decide if the district court did or didn't determine the facts a jury could find and, second, to determine the facts for ourselves if the district court didn't."). Thus, as to **Factor Three**, whether there was time to find an alternative solution to gain control of the dog, this Court should find that it weighs in favor of the Appellant. This case is a prime example of a rapidly evolving situation and an embodiment of a situation where officers have to make split-second decisions. The BWC footage clearly shows there was no time to find an alternative solution to control Herkimer, as the entire incident unfolded in **three (3) seconds**. Not only did the incident unfold rapidly, but Appellees were given an opportunity to control Herkimer and Herkimer did not respond to Appellee Hamm's verbal command. (App. Vol. III at 525, 121:5-10, at 609, 73:2-11, at 609-10, 73:2-25, 74:1-5).

Regarding **Factor Four**, whether non-lethal means were available to control the dog, undisputed evidence shows that in **three (3) seconds** that Appellant had, Appellant considered it but decided against it. Appellant did not want to take a chance with alternative methods because they may not have worked, and he did not have time to transition to an alternative. (App. Vol. III at 431, 133:4-8, at 432, 134:21-22). Appellant did not believe (i) a plastic baton would provide a sufficient barrier; (ii) he had time to get back inside the police vehicle; (iii) he had time to

switch to his Taser or that a Taser would be effective; and (iv) that using the door of the police car as a barrier would stop a dog from walking around and biting him. (App. Vol. III at 432, 134:21-22, at 426, 110:7-20, at 427, 114:4-6, 12-14). The Appellant was not required to carry OC spray and he did not have it available at the time of this incident. (App. Vol. III at 422, 97:4-12). Appellant's expert witness, Steve Ijames, supports Appellant's position that a baton, taser or running away from a dog may have not been effective. (App. Vol. IV at 766-767). This Court is not required to second guess a reasonable decision by a reasonable officer and substitute that with what someone else may have done if they were given a chance to analyze this situation later without pressure of time.[11] Appellees failed to present any evidence to dispute the beliefs and actions of the Appellant. Factor Four weighs in

---

[11] As a Sixth Circuit Court previously stated in a use of force case:

> Under *Graham* we must avoid substituting our personal notions of proper police procedure for the instantaneous decisions of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992).

favor of the Appellant.

As to **Factor Five**, whether Herkimer posed a danger to the Appellant or the public, the District Court stated that "[a]lthough a reasonable jury could decide that Herkimer posed a danger to Defendant demonstrating the type of 'tense, rapidly evolving situation where allowance is given for the police to make a split-second decisions', it could also decide that he did not pose immediate danger." (App. Vol. VI at 1066). The District Court then found that Factor Five weight in favor of Appellees. *Id*. But again, the District Court did not list what material facts it considered in its finding. Accordingly, it is impossible to determine if the District Court found that any material facts as to Factor Five were actually material and were in dispute. It is also important to note that the determination of whether Herkimer presented danger to the Appellant, or the public is a question of the law for the District Court to decide and not a question for the jury. It would only be a question for the jury if material facts were in dispute and it is unknown what material facts the District Court found to be in dispute as to Factor Five. Thus, this Court should undertake its own review.

As to **Factor Five**, whether the dog posed a danger to the officer or the public, it

is undisputed that Appellant believed he would be bitten and did not want to take the chance of being injured. (App. Vol. III at 427, 116:20-21). Appellant relied on his life experiences, and his belief is not only undisputed, but is also supported by general knowledge about Pitbulls. It is fair to say that a Pitbull can pose a serious threat to the safety of police officers and the safety of the public, in general. *See Am. Canine Found. v. City of Aurora*, 618 F. Supp. 2d 1271 (D. Colo. 2009) ("**pit bulls do not typically give warnings before they attack, unlike other breeds**") (emphasis added). A cursory glance at recent news articles yields a below example about a Pitbull, injuring a victim when the dog appeared friendly at first. See https://www.wsbtv.com/news/local/georgia-woman-recovering-atlanta-hospital-after-losing-part-her-leg-dog-attack/IUDP7VBGY5BHLFPYP6NIX5OH6Y/ ("I'm walking around to the front while I check the side of the house, and then next thing I remember is the dog was kind of coming up. I actually thought he was being friendly. Next thing, I know he is on my leg," victim told a TV station.)

"[I]nsuring officer safety and preventing the destruction of evidence are particularly important governmental interests that the courts must strive to protect." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 568 (6th Cir. 2016). Appellant acted in self-defense against a running dog that failed to follow a voice command

and continued running at the Appellant. "The law does not require the officer to wait until the approaching animal is within biting distance or is leaping at him before taking protective action." *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 272 (D. Conn. 2005) (citation omitted). "As long as it was reasonable for the officer to believe that danger was imminent, a fatal seizure may be justified even if the dog did not actually pose a danger to the officer." *Cabisca v. City of Rochester*, 2019 U.S. Dist. LEXIS 191052, *26 (W.D.N.Y. 2019). "Where danger is unexpected and imminent, or dogs are allowed to run free, unleashed, uncontrolled, and unsupervised, the balance tips in favor of the governmental interest." *Birkes v. Tillamook County*, 2011 WL 1792135 at *5 (D. Or. 2011).

The imminency of danger perceived by the Appellant is depicted in his BWC footage. Appellant had **3 seconds** to make a decision as to a course of action. This is the exact split-second decision-making discussed in *Graham v. Connor*, 490 U.S. 386 (1989). At some point during the encounter, the Appellant was faced with not only one, but two dogs running at him. The Pitbull continued to run at the Appellant and was not following commands to stop. Appellant's perception of danger was based on his personal experience which is supported by the perception and experience of other victims of dog attacks and bites discussed above. Case law is

replete with examples of received testimony regarding how unpredictable Pitbulls may be. In this situation, it was Appellant's belief that his firearm would protect him most effectively. (App. Vol. III at 427, 114:12-14). The Fourth Amendment reasonableness calculus permits officers some leeway in "tense, uncertain, and rapidly evolving" situations. *Graham*, 490 U.S. at 397. Appellant is permitted some leeway. The District Court erred in finding that Factor Five weight in favor of Appellees.

## IV. APPELLANT IS ENTITLED TO QUALIFIED IMMUNITY EVEN IF THE APPELLANT MADE A MISTAKE AS TO HERKIMER'S INTENTIONS.

The District Court erred in not addressing Appellant's argument that even if Appellant made a mistake as to Herkimer's actions and intentions, Appellant was still entitled to qualified immunity as his mistake was reasonable under the circumstances. (App. Vol. VI at 1060-1070). The Supreme Court has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages for all officers except "the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "An officer may be found to have acted reasonably even if he has a mistaken belief as to the facts establishing the existence of exigent circumstances*." Estate of Smart v. City of*

*Wichita*, 951 F.3d 1161, 1171 (10th Cir. 2020) (citation omitted). The Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). An officer may be found to have acted reasonably even if he has a mistaken belief as to the facts establishing the existence of exigent circumstances. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" (quotation omitted)).

In this case, although no one can know what Herkimer's intentions were, even if Appellant made a mistake as to Herkimer's intentions, he is still entitled to Qualified Immunity. Appellant only had a **3-second window of time** within which to make a decision as to Herkimer's intentions and as to the best way to protect himself from reasonably perceived imminent danger. Moreover, Appellant allowed Appellees an opportunity to control Herkimer, but Herkimer failed to respond to a verbal command. Although no one can know whether Herkimer would have bitten

Appellant, Appellant is allowed to protect himself against imminent danger, even if his perception may have been incorrect. Appellant's mistake was reasonable under the circumstances. This District Court erred in not granting Appellant Qualified Immunity.

## CONCLUSION

For the foregoing reasons, Appellant requests this Court to reverse the denial of Summary Judgment as to a Section 1983 Unlawful Seizure claim and grant Appellant Qualified Immunity.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument to address any questions the Court may have and/or any issue the Court may deem appropriate to raise.

Dated: April 1, 2024          Respectfully submitted,

**SGR, LLC**

*s/ Jonathan M. Abramson*
Jonathan M. Abramson

*s/ Yulia Nikolaevskaya*
Yulia Nikolaevskaya
*Attorneys for Appellant Officer Matthew Grashorn*

## CERTIFICATE OF DIGITAL SUBMISSION
## AND PRIVACY REDACTIONS

I hereby certify that with respect to the foregoing:

    1.    No privacy redactions were required per 10th Cir. R. 25.5;

    2.    If required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    3.    The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Trend Micro Worry-Free Business Security Agent, and according to the program are free of viruses.

*/s/ Carol J. Kelly*
Legal Secretary

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(g) because this brief contains **7,336** words. This was determined using Microsoft

Word's word-count feature.

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Office

Word in 14-point, Times New Roman.

Date:  April 1, 2024.

By:     *s/ Yulia Nikolaevskaya*
          Yulia Nikolaevskaya

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of April 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

sarah@lifeandlibertylaw.com
Sarah Schielke

*/s/ Carol J. Kelly*
 Legal Secretary

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore**

Civil Action No. 21-cv-02502-RM-KLM

WENDY LOVE, and
JAY HAMM,

      Plaintiffs,

v.

MATHEW GRASHORN,

      Defendant.

---

**ORDER**

---

      This action brought under 42 U.S.C. § 1983 arises out of Defendant's shooting of Plaintiffs' dog.  It is before the Court on Defendant's Motion for Summary Judgment (ECF No. 101), asserting that Defendant is entitled to qualified immunity.  The Motion has been fully briefed.  (ECF Nos. 117, 133.)  Defendant has also filed a Motion to Exclude (ECF No. 110), seeking to exclude certain testimony of Plaintiff's expert witness, James W. Crosby.  That Motion has been briefed as well.  (ECF Nos. 125, 135.)  Both Motions are granted in part but otherwise denied for the reasons below.

I.      **BACKGROUND**

      In June 2019, Defendant was on duty as a patrol officer with the Loveland Police Department.  (ECF No. 134, ¶ 1.)  On the day of the shooting, a Loveland property owner called the police because, via video surveillance, he observed people and a truck in the parking lot of his business.  (*Id.* at ¶¶ 5, 7.)  The caller reported that no one should be on the property on

**ATTACHMENT 1 TO
APPELLANT'S OPENING BRIEF**

weekends and requested that a unit stop by.  (*Id.* at ¶¶ 5, 8.)  Defendant and another officer were dispatched to the location; Defendant arrived first in his patrol vehicle.  (*Id.* at ¶ 11.)

Subsequent events occurred in a matter of seconds and are observable from Defendant's "body cam" footage.  Defendant parked several yards away from Plaintiffs' truck and exited his vehicle.  A large dog ("Bubba") that had been lying on the ground got up and began running toward him.  Defendant withdrew his firearm and pointed it at Bubba.  Plaintiff Hamm called off Bubba, who turned around.  (*Id.* at ¶ 30.)  Meanwhile, another dog ("Herkimer"), resembling a pit bull, emerged from Plaintiffs' truck.  It ran first toward Bubba and then in Defendant's direction.  Once he was a few feet away from Defendant, Defendant shot him twice.  While Herkimer lay on the ground, Plaintiff Love began walking toward him.  Defendant initially ordered Plaintiffs to get back to the truck but then allowed Plaintiff Love to console the wounded dog.

Several other officers soon arrived at the scene.  About ten minutes after the shooting, Plaintiffs were allowed to take Herkimer to the vet, although they asked for permission to do so sooner.  Herkimer was later euthanized.

Plaintiffs filed their initial complaint in state court, asserting claims against Defendant and three other officers.  After the case was removed to this Court, the claims against the other officers were dismissed, leaving only Plaintiffs' claims against Defendant for unlawful seizure under Colorado and federal law.  (*See* ECF No. 90.)  The case has proceeded through discovery and is set for a five-day jury trial in November 2024.

## II.      LEGAL STANDARDS

### A.      Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The substantive law of the case determines which facts are material."  *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### B.      Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Gutteridge*, 878 F.3d at 1238; *Estate of*

*Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the burden of the movant for summary judgment—showing that there are no genuine issues of material fact that he or she is entitled to judgment as a matter of law." *Gutteridge*, 878 F.3d at 1238 (quotation omitted).

### C.  Expert Testimony

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

If the Court determines that an expert is sufficiently qualified to render an opinion, it must then determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology. *See Nacchio*, 555 F.3d at 1241. In doing so, the Court considers

4

(1) whether the testimony is based on sufficient facts or data; (2) whether it is the product of reliable principles and methods; and (3) whether the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b)-(d).

If the evidence is sufficiently reliable, the Court then evaluates whether the proposed evidence or testimony is sufficiently relevant that it will assist the jury in understanding the evidence or determining a fact at issue. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005). But even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has discretion in how it performs its gatekeeper function. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

## III.    ANALYSIS

### A.    Summary Judgment Motion

#### 1.    Federal Claim

It is clearly established in this Circuit that a police officer's shooting of a pet dog is a "seizure" under the Fourth Amendment. *Mayfield v. Bethards*, 826 F.3d 1252, 1258-59 (10th Cir. 2016); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3rd Cir. 2001). Whether the seizure here violated Plaintiffs' constitutional rights depends on whether it was reasonable under the circumstances. *See Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006); *see also Branson v. Price*, No. 13-cv-03090-REB-NYW, 2015 WL 5562174, at *7 (D. Colo. Sept. 21, 2015) (unpublished) ("[T]he robust consensus of persuasive authority from other courts of appeal demonstrates that the defendant had fair notice, even in this novel factual circumstance, that using deadly force against a dog was unlawful when the dog did not present an imminent

threat to law enforcement or the public.").  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer."  *Andrews*, 454 F.3d at 918 (citing *Graham v. Conner*, 490 U.S. 386, 396-97 (1989)).  To defeat Defendant's claim of qualified immunity, Plaintiffs must show that a reasonable officer with the information Defendant had at the time of the shooting would have believed his conduct was lawful under clearly established law.  *See Brown*, 269 F.3d at 211.

Factors courts consider in analyzing whether a seizure of a dog is reasonable under the totality of the circumstances include the following:

(1)  Whether the dog was "at-large" or whether the owner was available and willing to assert control over the dog.

(2)  The breed of the dog.

(3)  Whether there was time to find an alternative solution to gain control of the dog.

(4)  Whether non-lethal means were available to control the dog.

(5)  Whether the dog posed a danger to the officer or the public.

*Branson*, 2015 WL 5562174, at *5 (citations omitted).

Considering these factors and viewing the evidence—including the video footage—in the light most favorable to Plaintiffs, the Court finds there are genuine issues of material fact concerning whether Defendant's actions were reasonable.  First, a reasonable fact finder could conclude that Herkimer was not "at-large" when Defendant shot him.  Although he was unleashed on private property, his owners were present, and they had already successfully called off one of their other dogs.  It is impossible to know what Herkimer would have done had he not been shot, but the circumstances do not conclusively establish that he was "at-large."  Therefore, this factor weighs in Plaintiffs' favor.

Second, Herkimer looked like a pit bull, a breed that is widely perceived as unpredictable and dangerous.  This factor weighs in Defendant's favor, but it is not dispositive.  *See id.* at *6 ("Even though [the officer] reasonably perceived the dog to be a dangerous breed, that fact alone does not justify a seizure in the form of shooting the dog.").

The third and fourth factors do not weigh heavily in either side's favor.  Although the situation evolved rapidly, the circumstances do not conclusively establish that a reasonable officer in Defendant's position could not have used non-lethal means available to avoid whatever danger the approaching dog posed.  At the very least, it is debatable whether Defendant had enough time to respond differently.  Thus, these factors weigh slightly in Plaintiffs' favor.

The Court finds that the fifth factor is the most critical in assessing the reasonableness of Defendant's conduct here.  "Incidents involving a dog that has not actually attacked a person are closer cases and can demonstrate that the deadly force was unreasonable."  *Branson*, 2015 WL 5562174, at *5 (quotation omitted).  Although a reasonable jury could decide that Herkimer posed a danger to Defendant demonstrating the type of "tense, rapidly evolving situation where allowance is given for the police to make split-second decisions," it could also decide that he did not pose an immediate danger.  *Id.* at *6.  Because there is sufficient evidence of the latter, this factor weighs in Plaintiffs' favor at this stage.  On balance, a reasonable jury could conclude that Defendant's conduct was unreasonable, and therefore the Court finds he is not entitled to qualified immunity.

2.    State Claim

According to the operative Complaint (ECF No. 31), Plaintiffs' state unlawful seizure claim is premised on Colo. Rev. Stat. § 13-21-131 and mirrors their federal unlawful seizure claim with respect to Defendant.  In his Motion, Defendant argues that the statute was not yet in

effect when the shooting occurred and that there is no evidence of legislative intent to overcome

the presumption that statutes operate prospectively.  (*See* ECF No. 101 at 16-19.)  In their

Response, Plaintiffs do not address, much less refute, Defendant's position.  Thus, the Court

finds they have abandoned this claim.  In the alternative, the Court further finds there is no

indication that § 13-21-131 was intended to apply retroactively, and therefore Plaintiffs' reliance

on it here is inapposite.  Accordingly, Defendant is entitled to summary judgment on Plaintiffs'

state claim.

### B.      Motion to Exclude

In his Motion to Exclude, Defendant asserts that the Court should exclude certain opinion

testimony by Plaintiffs' retained expert, James W. Crosby, who is endorsed as an expert in police

training, police practices, police use of force, and canine behavior.  Defendant contends that

various opinions of Mr. Crosby should be excluded because they usurp the function of the jury in

deciding the facts, opine as to the credibility of Defendant's position and testimony, state legal

conclusions, and are irrelevant.  He further contends that Mr. Crosby lacks specialized

knowledge or training in taser use and therefore should not be permitted to opine on this topic.

Defendant objects to dozens of excerpts from Mr. Crosby's report.  Rather than address each of

them individually, the Court will endeavor to highlight illustrative examples that demonstrate

how the Court intends to allow—but cabin—Mr. Crosby's testimony at trial.

First, the report states that Plaintiffs were acting in a "peaceful and lawful manner" when

Defendant arrived at the parking lot, even though they were trespassing on private property and

two of their dogs were unleashed.  Equally problematic is that Mr. Crosby has no personal

knowledge about what Plaintiffs were doing that day before Defendant arrived.  Further, his

statements on this topic do not seem to implicate his specialized knowledge about police

practices or canine behavior.  Accordingly, the Court will exclude any statements by Mr. Crosby about events that occurred before Defendant arrived at the parking lot or the legality of, or reasons for, Plaintiffs' presence there.

Second, the report states that Defendant "shot and killed" Herkimer.  Although the shooting is not disputed, the record reflects that Herkimer was subsequently euthanized. Mr. Crosby has not shown that he has any pertinent qualifications that would allow him to opine as to the cause of Herkimer's death, and the Court finds that the probative value of his statements about Defendant killing Herkimer is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.  Accordingly, these statements are properly excluded.

Third, the reports states that Defendant did "not attempt to secure or deploy any less-lethal means of deterrent" before withdrawing his firearm.  The report makes similar statements about Defendant's state of mind during the episode and about things he did or did not consider or decide.  For example, Mr. Crosby asserts that "it was improper and incorrect for [Defendant] to claim that he perceived Herkimer as 'aggressive.'"  (ECF No. 118-2 at 13.)  But aside from the problem that Mr. Crosby can only surmise Defendant's thought process during this episode, the relevant question here is what a reasonable officer would have done in this situation, and Defendant's subjective beliefs are not relevant to the inquiry of whether his conduct violated Plaintiffs' constitutional rights.  *See Andrews*, 454 F.3d at 918.  Thus, Mr. Crosby may offer his opinions about what a reasonable officer would have perceived and how a reasonable officer might have reacted under these circumstances, but he may not state his opinions on what Defendant was or was not thinking at the time.  This includes any statements by Mr. Crosby about the "approach" Defendant appears to have adopted with respect to dog encounters generally and what Defendant may have believed Plaintiffs were up to when he arrived.  (*Id.*)  In

9

addition to the relevance concerns the Court has about such statements, they are objectionable because they would encroach on the jury's duty to assess the credibility of witnesses and because they state or come very close to stating legal conclusions that are at the heart of this case. "Expert testimony crosses the line between the permissible and impermissible when it 'attempts to define the legal parameters within which the jury must exercise its fact-finding function.'" *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1285 (W.D. Okla. 2018) (quoting *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1246 (10th Cir. 2000)).  Accordingly, Mr. Crosby can testify to facts from which the jury can infer Defendant's motive, intent, or state of mind, but he cannot testify directly as to Defendant's motive, intent, or state of mind.  *See Liberty Mut. Fire Ins. Co. v. Michael Baker Int'l, Inc.*, No. 19-cv-881-JNP, 2022 WL 973079, at *11 (D. Utah Mar. 31, 2022) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as impermissible.").

Fourth, the Court agrees with Defendant's contention that Mr. Crosby's opinions as to whether Defendant complied with the Loveland Police Department's policy, procedures, and training are not relevant to the issue of whether a constitutional violation occurred.  (*See* ECF No. 110 at 15.)  The protections of the Fourth Amendment do not vary from place to place and from time to time as police enforcement practices do.  *Whren v. United States*, 517 U.S. 806, 815 (1996).  Similarly, the Court agrees with Plaintiffs' contention that the Department's internal review following the shooting is not relevant to the claims remaining in this case.

Fifth, the Court will not preclude Mr. Crosby from testifying about tasers.  Defendant cites no authority to support the bizarre suggestion that an experienced police officer must have used a taser on an animal as a prerequisite to testifying about the possibility of using a taser under the circumstances here.  In any event, the Court finds that arguments and evidence

pertaining to Mr. Crosby's degree of familiarity with tasers go to the credibility of any testimony he might offer on the topic, not its admissibility.

Subject to these limitations, Mr. Crosby may offer his opinions on whether Herkimer posed a danger to Defendant and whether Defendant's actions were consistent with those of a reasonable officer, including his shooting of Herkimer a second time and his refusal to allow Plaintiffs to get Herkimer to a veterinarian.  Mr. Crosby may also help the jury understand best practices for canine interactions.  "Ultimately, the rejection of expert testimony is the exception rather than the rule."  *O'Sullivan v. GEICO Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quotation omitted).  To the extent such testimony may be cumulative or objectionable for reasons not addressed in this Order, the Court will consider appropriate objections at trial.

## IV.    CONCLUSION

Accordingly, both Motions (ECF Nos. 101, 110) are GRANTED IN PART, as set forth in this Order, but otherwise DENIED.

DATED this 15th day of November, 2023.

BY THE COURT:

RAYMOND P. MOORE
Senior United States District Judge